MARK HOLSCHER (139582)
mark.holscher@kirkland.com
JEFFREY S. SINEK (135508)
jeff.sinek@kirkland.com
MARK T. CRAMER (198952)
mark.cramer@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California  90071
Telephone: (213) 680-8400
Facsimile:   (213) 680-8500

Attorneys for Defendant
IMG WORLDWIDE, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW BALDWIN,<br><br>          Plaintiff,<br><br>     vs.<br><br>IMG WORLDWIDE, INC., an Ohio corporation,<br><br>          Defendant. | CASE NO. 2:10-cv-02408-GW (SSx)<br><br>**IMG'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Complaint Filed:  April 2, 2010<br><br>Hon. George H. Wu<br><br>Date:        May 27, 2010<br>Time:       8:30 a.m.<br>Courtroom:  10 |

# **TABLE OF CONTENTS**

**Page**

I.   BALDWIN IS NOT ENTITLED TO DECLARATORY RELIEF IN
     THIS COURT...........................................................................................4

     A.   The Court Should Decline Its Discretionary Jurisdiction And
          Dismiss This Case. ..................................................................................4

     B.   The First-To-File Rule Does Not Apply. ................................................4

          1.   The Court Cannot Grant Complete Relief Here Because
               IMG's Ohio Action Involves Multiple Claims And Issues
               That Are Not Part Of This Case. .................................................4

          2.   Plaintiff's Anticipatory Action Falls Within A Number Of
               Exceptions To The First-To-File Rule.........................................6

II.  THE STIPULATED JUDGMENT IN THE DANZI ARBITRATION
     MAY NOT BE USED TO INVOKE COLLATERAL ESTOPPEL. ...........13

III. PLAINTIFF'S VENUE ARGUMENT IS A RED HERRING AND HAS
     NO BEARING ON IMG'S MOTION. ........................................................14

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
   946 F.2d 622 (9th Cir. 1991) ...................................................................4, 6

*AmSouth Bank v. Dale*,
   386 F.3d 763 (6th Cir. 2004) .......................................................................4

*Argent Funds Group, LLC v. Schutt*,
   No. 3:05-cv-1456, 2006 U.S. Dist. LEXIS 60469 (D. Conn. June 27, 2006).......3, 15

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
   511 F.3d 535 (6th Cir. 2007) .......................................................................8

*DeFeo v. Proctor & Gamble Co.*,
   831 F. Supp. 776 (N.D. Cal. 1993) ...............................................................6

*Gov't Employees Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) (en banc) .................................................4, 11

*Greenwich Ins. Co. v. Media Breakaway, LLC*,
   No. CV08-937 CAS, 2009 WL 2231678 (C.D. Cal. Jul. 22, 2009)..........................13

*Gribin v. Hammer Galleries*,
   793 F. Supp. 233 (C. D. Cal. 1992) ..............................................................9

*Harry Miller Co. v. Carr Chem Inc.*,
   5 F. Supp. 2d 295 (E.D. Pa. 1998)...........................................................3, 15

*In re Berr*,
   172 B.R. 299 (B.A.P. 9th Cir. Sept. 14, 1994) .................................................13

*In re Gunther*,
   2009 WL 3104033, 2 (B.A.P. 6th Cir. Sept. 30, 2009) ......................................13

*Inogen, Inc. v. Invacare Corp.*,
   Civ. No. 2:05-cv-08765 (C.D. Cal. Feb. 21, 2006) ........................................6, 8

*Manuel v. Convergys Corp.*,
   430 F.3d 1132 (11th Cir. 2005) ...................................................................4

*Meints v. Regis Corp.*,
   No. 09-cv-2061, 2010 WL 625338 (S.D. Cal. Feb. 16, 2010) ...............................4

*Mission Ins. Co. v. Puritan Fashions Corp.*,
   706 F.2d 599 (5th Cir. 1983) ...................................................................7, 9

*N.Y. Mercantile Exch. v. Central Tours Int'l, Inc.*,
   1997 U.S. Dist. LEXIS 9242 (S.D.N.Y. Jul. 1, 1997)..........................................15

*NSI Corp. v. Showco, Inc.*,
   843 F. Supp. 642 (D. Or. 1994) ..................................................................12

*Pacesetter System, Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (C.A. Cal. 1982) ............................................................................. 5

*Palantir Techs., Inc. v. Palantir.net, Inc.*,
   2007 WL 2900499 (N.D. Cal. Oct. 2, 2007) ........................................................ 6

*Premcor Ref. Group, Inc. v. Born, Inc.*,
   2006 U.S. Dist. LEXIS 935 (N.D. Ohio Jan. 12, 2006) ..................................... 15

*Renteria v. Ramanlal*,
   2009 U.S. Dist. LEXIS 4127 (D. Ariz. Jan. 9, 2009) ........................................ 15

*Riggs v. Palmer*,
   115 N.Y. 506 (1889) ........................................................................................ 12

*Schmitt v. JD Edwards World Solutions Co.*,
   2001 WL 590039 (N.D. Cal., May 18, 2001) ....................................................... 6

*Successories, Inc. v. Arnold Palmer Enter., Inc.*,
   990 F. Supp. 1044 (N.D. Ill. 1998) .................................................................. 14

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
   819 F.2d 746 (7th Cir. 1987) ........................................................................... 15

*Torn Ranch, Inc. v. Sunrise Commodities, Inc.*,
   2009 WL 2834787 (N.D. Cal. 2009) ................................................................... 9

*Trippe Mfg. Co. v. Am. Power Conversion Corp.*,
   46 F.3d 624 (E.D. Pa. 1998) ............................................................................ 14

*Witkowski v. Welch*,
   173 F.3d 192 (3rd Cir. April 12, 1999) ............................................................ 14

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assocs., Inc.*,
   16 Fed. Appx. 433 (6th Cir. 2001) ................................................................... 12

*Z-Line Designs, Inc. v. Bell'O Int'l, LLC*,
   218 F.R.D. 663 (N.D. Cal. 2003) ........................................................................ 5

**Statutes**

18 Moore's Fed. Prac. § 132.03[2][i] .................................................................... 13

Cal. Civ. Code § 3517 ......................................................................................... 12

Cal. Civ. Code § 3531 ......................................................................................... 12

iii

# **INTRODUCTION**

Plaintiff's Opposition spends little time addressing the substance of IMG's motion, which is telling.  Instead, Plaintiff devotes considerable time falsely characterizing the merits of IMG's Ohio action and mischaracterizing the purported legal effect of a prior arbitration between IMG and another former IMG employee.  For instance, Plaintiff falsely asserts that IMG has "abandoned" its claim in the Ohio action that he breached his non-solicitation agreement.  While Plaintiff and his counsel may wish that were the case, it is not.  Far from abandoning its claim against Plaintiff, IMG's case in Ohio is expanding as it uncovers additional evidence of Plaintiff's duplicitous conduct.  On May 12, 2010, IMG filed an amended complaint against Plaintiff in Ohio to add more Ohio-law-based claims of spoliation of evidence and breach of the Standstill Agreement the parties submitted to the Court in Ohio.  Cramer Decl., Exs. 1, 4.

As described in IMG's opening brief, Plaintiff copied confidential and proprietary IMG files and documents from his IMG-issued laptop computer onto a USB storage device after he resigned from IMG.  Based in part on this evidence, IMG filed its complaint against Plaintiff in Ohio.  During a telephonic hearing before United States District Judge O'Malley in the Northern District of Ohio on April 16, 2010, the parties entered into an oral Standstill Agreement, which was reduced to writing and provided to Judge O'Malley.  Among other things, Plaintiff agreed to return all IMG documents he had copied onto the USB device.  After IMG received the USB drive from Plaintiff, IMG's retained computer forensics expert at Stroz Friedberg examined it.  Stroz uncovered proof that Plaintiff deleted numerous IMG files and documents from the USB device on April 9, 14, 15 and 16, 2010, the same day Plaintiff's lawyers were representing to the Ohio federal court that Plaintiff would return all IMG documents, in an obvious attempt to conceal evidence of his misappropriation of confidential IMG information and trade secrets.  Cramer Decl., Ex. 2.

1   Clearly, Plaintiff's declaratory judgment before this Court is inadequate to
2   resolve the parties' dispute.  Although Plaintiff erroneously describes IMG's Ohio
3   action as "duplicative" of this action, it is undeniable that IMG's Ohio action, with
4   claims of trade secret misappropriation and spoliation of evidence, encompasses a
5   number of claims and issues that are not part of Plaintiff's action here, which only
6   seeks a declaration of one aspect of Plaintiff's employment agreement.  Plaintiff
7   ignores that this fact alone precludes his first-to-file argument, and makes Ohio the
8   proper forum.

9   Ironically, Plaintiff's first-to-file argument also fails because his Opposition
10  confirms he engaged in forum shopping and that he anticipated being sued by IMG.
11  Far from denying that he engaged in forum shopping, Plaintiff's Opposition details the
12  affirmative steps he took to best posture himself to secure a California forum.  Further,
13  Plaintiff's own declaration rebuts the argument made in his Opposition that he "could
14  not, and did not, anticipate being sued by IMG in any forum, let alone in Ohio."
15  Opp'n. 3.  Contrary to this assertion, Plaintiff admits in the section of his declaration
16  explaining why he filed this lawsuit that he did so because "I expected that IMG might
17  seek arbitration here."  *See* Baldwin Cal. Decl. ¶ 40.

18  Plaintiff's attacks on IMG's action in Ohio are irrelevant and inaccurate.  His
19  counsel's self-serving assertion that IMG has abandoned its claim that Plaintiff
20  breached the non-solicitation clause is of no weight, especially in light of the fact that
21  Plaintiff has misappropriated IMG's trade secrets and client information and
22  Plaintiff's current employer admits to soliciting IMG clients.  Further, Plaintiff's
23  assertions on this subject are entitled to no weight.  Plaintiff is an admitted liar who
24  concedes he lied to his supervisors at IMG on March 31 and April 1, 2010, by telling
25  them he planned to stay at IMG, when in fact he had already decided to quit and was
26  using the time to finalize this lawsuit.  Further, Plaintiff has been caught destroying
27  evidence.

28

2

Plaintiff's Opposition asserts, "there is no choice-of-forum provision in Baldwin's employment agreement permitting IMG to sue Baldwin in Ohio, where venue is plainly lacking."  Opp'n 1.  Ohio, however, is the proper venue for IMG's action, not the result of any forum shopping by IMG.  Many of the trade secrets, confidential information and proprietary documents that Plaintiff took trace their origin in part or in whole to IMG's Ohio headquarters and support venue in Ohio. *See*, *e.g.*, *Harry Miller Co. v. Carr Chem Inc.*, 5 F. Supp. 2d 295, 298 n.1 (E.D. Pa. 1998) ("trade secrets have a situs in their state of origin"); *Argent Funds Group, LLC v. Schutt*, No. 3:05-cv-1456, 2006 U.S. Dist. LEXIS 60469, at *6-7 (D. Conn. June 27, 2006) (finding venue proper in Connecticut because defendant was alleged to have misappropriated confidential business information based on a computer server in Connecticut).  Plaintiff's misappropriation of trade secrets alone provides venue in Ohio.

Moreover, Plaintiff, a member of the Ohio bar, signed an employment agreement with an Ohio company.  His Employment Agreement expressly states that it is governed by Ohio law.  The only venue provided for in his Employment Agreement was Ohio.  The trade secrets and confidential information Baldwin took originated in Ohio and the harm caused by the misappropriation is felt by IMG in Ohio.

In sum, Plaintiff's Opposition fails to refute what IMG demonstrated in its opening brief.  Plaintiff's race to the courthouse immediately after resigning was an improper anticipatory declaratory judgment action that should be dismissed.[1]

---

[1] Plaintiff makes a half-hearted attempt to argue that IMG's counsel did not engage in a satisfactory meet and confer.  Kaiser Decl. ¶¶ 22-27.  Contrary to this assertion, IMG's counsel expressly explained all of the bases for IMG's Motion to Dismiss in the meet and confer.  Cramer Decl. ¶¶ 4-5.  Given that Plaintiff lied to IMG about his intention to stay at IMG, it is ironic for him to complain that IMG did not inform his counsel in advance that IMG intended to sue him in Ohio.

# REPLY ARGUMENTS

I.   **Baldwin Is Not Entitled To Declaratory Relief In This Court.**

    A.   **The Court Should Decline Its Discretionary Jurisdiction And Dismiss This Case.**

As explained in IMG's opening brief, the Court has discretion to decide whether to exercise its jurisdiction to allow this case to proceed. *See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (en banc). "The factors relevant in deciding whether to hear a declaratory judgment action are equitable in nature" and include whether a party filed its action (1) in anticipation of another proceeding; (2) as a means of forum shopping; or (3) in bad faith. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005); *Dizol*, 133 F.3d at 1225; *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). These are the same factors courts consider to determine whether there is a valid exception to the first-to-file rule. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (exceptions to applying the first-filed rule are anticipatory suits, forum shopping, and bad faith). Plaintiff's Opposition confirms that each of these factors weighs against his action proceeding here. Because the factors are the same under both analyses, IMG will discuss each factor below in the context of Plaintiff's first-to-file arguments (or lack thereof). But the Court can and should decline jurisdiction and dismiss this case without ever reaching the first-to-file analysis.

    B.   **The First-To-File Rule Does Not Apply.**

        1.   **The Court Cannot Grant Complete Relief Here Because IMG's Ohio Action Involves Multiple Claims And Issues That Are Not Part Of This Case.**

Plaintiff argues that he is entitled to declaratory relief because he filed his action first. Opp'n at 14-23. But courts have "significant discretion in deciding whether to apply the first to file rule." *Meints v. Regis Corp.*, No. 09-cv-2061, 2010 WL 625338, at *2 (S.D. Cal. Feb. 16, 2010). Although filing first is a necessary condition to argue the first-to-file rule, it is not sufficient. There are other threshold

4

requirements the Court must consider, including the similarity of the issues between the first and second filed actions.  *See Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) ("In applying [the 'first-to-file'] rule, a court typically looks at three factors:  (1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues.").  Undoubtedly aware that his action and IMG's Ohio action do not have a similarity of issues, Plaintiff attempts to circumvent this requirement through selective quotes and creative use of ellipses.  For example, when Plaintiff quoted the following passage from *Pacesetter System, Inc. v. Medtronic, Inc.*, he omitted critical language (indicated with underlining) that alters the court's opinion:

> There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.  <u>Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction</u>, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action.
>
> *Pacesetter*, 678 F.2d 93, 94-95 (C.A. Cal. 1982).  *Cf.* Opp'n 14 n.9

When quoted in full, *Pacesetter* does not support Plaintiff's first-to-file argument.   Here, Plaintiff cannot dispute that his action is narrower in scope than IMG's Ohio action.  The two actions involve different claims and different remedies.  Indeed, Plaintiff makes a point of arguing that his case does not seek any relief related to IMG's confidential information.  Opp'n 17 n.13.  While Plaintiff's complaint focuses exclusively on the enforceability of his non-solicitation provision, IMG's Ohio action involves much more, including claims based on Plaintiff's theft of trade secrets.  In addition, IMG amended its Ohio complaint to add a claim for spoliation of evidence based on Plaintiff's deletion of IMG files from the USB drive that he used to

1   copy IMG trade secrets from his IMG laptop to his new computer at CAA.  Given the

2   differences between this action and the Ohio action, the Court should decline to follow

3   the first-to-file rule because Plaintiff's action is inadequate to resolve all of the

4   parties' disputes.  *See Schmitt v. JD Edwards World Solutions Co.,* 2001 WL 590039,

5   at *3 (N.D. Cal., May 18, 2001).

### 2.   Plaintiff's Anticipatory Action Falls Within A Number Of Exceptions To The First-To-File Rule.

8           Plaintiff attempts to distinguish the numerous highly analogous decisions by

9   courts to dismiss declaratory judgment actions like his, *e.g., Inogen, Inc. v. Invacare*

10  *Corp.*, Civ. No. 2-05-cv-08765 (C.D. Cal., Feb. 21, 2006); *DeFeo v. Proctor &*

11  *Gamble Co.*, 831 F. Supp. 776 (N.D. Cal. 1993).  Opp'n 17.  Judge Wilson's analysis

12  in *Inogen*, which refused to permit orchestrated first-to-file jurisdiction, is directly on

13  point no matter how Plaintiff tries to distinguish it and other cases cited by IMG by

14  creating his own categories for these cases.  No court, however, has ever adopted or

15  approved Plaintiff's arbitrary categories.  For instance, whether the employment

16  agreement at issue includes a non-competition clause versus a non-solicitation clause

17  is immaterial.

18          Plaintiff acknowledges—as he must—that there are exceptions to the first-to-

19  file rule.  Opp'n 15.  Thus, even if the Court finds the threshold factors of the first-to-

20  file rule are satisfied, it should nonetheless dismiss Plaintiff's complaint if any of the

21  exceptions apply.  As explained above (and acknowledged in the cases Plaintiff

22  selectively summarizes in his Opposition), the "[c]ircumstances in which an exception

23  will typically be made include when the plaintiff has: (1) filed an anticipatory suit, (2)

24  acted in bad faith, or (3) engaged in forum shopping."  *See Palantir Techs., Inc. v.*

25  *Palantir.net, Inc.,* 2007 WL 2900499, at *1 (N.D. Cal. Oct. 2, 2007) (citing *Alltrade*

26  *Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)); Opp'n 15-16.  In his

27  Opposition, Plaintiff only discusses the anticipatory strike exception.  *Id.* at 15-23.

28  But anticipatory actions are only <u>one</u> aspect of forum shopping.  *See Mission Ins. Co.*

1   *v. Puritan Fashions Corp.*, 706 F.2d 599, 602 n.3 (5th Cir. 1983) ("Anticipatory suits

2   are disfavored because they are an aspect of forum-shopping.").  Plaintiff does not

3   address, much less refute, either of the other exceptions IMG raised in its opening

4   brief.

5          Although IMG only needs one exception to justify dismissal, Plaintiff hit the

6   trifecta here.  As detailed in IMG's opening brief, each of the exceptions is met

7   because Plaintiff (1) shopped for a California forum to take advantage of favorable

8   California law; (2) filed this suit as a preemptive or anticipatory strike to prevent IMG

9   from bringing suit elsewhere; and (3) engaged in bad faith misleading tactics to obtain

10   the forum he wanted before IMG had a chance to take any action of its own.  *See* Mot.

11   7-14.

12          **Plaintiff does not deny he shopped for a California forum.**  Rather than

13   address the premeditation behind his own forum shopping, Plaintiff dodges the issue

14   altogether and makes the remarkable argument that IMG engaged in forum shopping

15   by pursuing its later action against Plaintiff in Ohio.  Opp'n 3, 15 n.10.  That

16   accusation is false.  Far from forum shopping, IMG filed its action in Ohio because

17   that is the forum IMG and Baldwin mutually bargained for and expressly selected in

18   Plaintiff's employment agreement.  Notwithstanding his agreement, Plaintiff sought

19   out a forum the parties neither contemplated nor agreed upon.  But even if it were true,

20   it has no bearing on whether Plaintiff's action falls within the forum shopping

21   exception.  The relevant forum shopper for purposes of the forum shopping exception

22   is Plaintiff, *i.e.*, the first-filer, not IMG.

23          Plaintiff filed his action in California after extensive planning with self-

24   described "experienced counsel" advising him on all the steps he would need to take

25   to bolster his chances of securing a California forum and the application of California

26   law.  Opp'n 9, 23.  Plaintiff spends pages of his Opposition summarizing California

27   law on non-compete provisions, which betrays (if not underscores) the reasons he has

28   gone to such great lengths to have California law apply to this dispute.  *See* Opp'n 10-

14.  But the substance of California law on these issues could conceivably come into play only if Plaintiff's case was properly filed here, which it was not.  Like the first-filer in *Invacare*, Plaintiff's arguments here suggest that he "carefully planned the timing of this action in order to obtain the benefit of favorable California laws."  *See* Jackson Decl., Ex. 6 (*Inogen, Inc. v. Invacare Corp.*, Civ. No. 2:05-cv-08765 (C.D. Cal. Feb. 21, 2006)).[2]  His filing in California is a classic example of impermissible forum shopping.

Plaintiff's intent to forum shop is clear.  In his declaration, Plaintiff acknowledges that he was aware of the *Danzi* arbitration.  Baldwin Cal. Decl. ¶ 41. Plaintiff's counsel acknowledged at a hearing in the Ohio action that Plaintiff sought out California as the forum:  "The whole purpose, Your Honor, the whole purpose, the only purpose of filing the action in the Central District was to get a declaration from the Court, the same Court that confirmed the Danzi award and is very familiar with these issues, okay, to get a declaratory judgment that his covenant was unenforceable, so that he can go about and solicit his old clients."  Laufgraben Decl., Ex. B (Ohio Hr'g. Tr. at 12:22-13:4)

Based on the forum shopping exception alone—which Plaintiff does not address, much less refute—the Court should disregard the first-to-file rule and exercise its discretion to dismiss this case.  *See* Jackson Decl., Ex. 6 at 43 (noting that forum-shopping and bad faith are "separate grounds for dismissing the action").

---

[2] Plaintiff's attempt to distinguish *Certified Restoration* based on the allegation that his contract does not include an exclusive forum selection clause misses the point. *See* Opp'n 20.  In *Certified Restoration*, the existence of the forum selection clause was the motivation for plaintiff's forum shopping:  "As the Ohio district judge recognized when it dismissed the action, the forum selection clause in the franchise agreement clearly mandated that the parties' dispute be resolved in a Michigan, rather than an Ohio, forum.  By filing in Ohio courts, Defendants were attempting to forum shop as well as preempt resolution of the parties' dispute by the proper forum." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007).  Likewise, here, Plaintiff was motivated to file his suit in California first (and assert a materially greater interest) to try to avoid the Ohio choice-of-law provision in his employment agreement.

**__Plaintiff's Action Is An Anticipatory Strike.__**  As explained in IMG's opening brief, an anticipatory strike involves bringing a preemptive declaratory relief action to deprive the true plaintiff from filing a coercive action in the forum of its choice.  Mot. 7-8 (citing cases).  Plaintiff does not and cannot dispute he shopped for this California forum and California law.  Instead, Plaintiff's Opposition focuses exclusively on the fact that IMG never threatened imminent litigation, so he could not have filed this case in anticipation of litigation.  Opp'n 14-23.  Putting aside the fact that express threats of imminent litigation have not been required,[3] Plaintiff's argument nevertheless fails for a number of reasons.

*First*, Plaintiff admits he anticipated a lawsuit.  In his declaration, under the heading "**__Why I Filed This Lawsuit__**," Plaintiff declares:  "I expected that IMG might seek arbitration here."  *See* Baldwin Cal. Decl. ¶ 40 (emphasis in original).  This admission contradicts the assertion in his Opposition that he "could not, and did not, anticipate being sued by IMG in any forum, let alone in Ohio."  Opp'n 3.  Moreover, there is no distinction between anticipating a court action versus an arbitration action. *See, e.g., Torn Ranch, Inc. v. Sunrise Commodities, Inc.*, 2009 WL 2834787, at *5 (N.D. Cal. 2009) (finding case fell outside the first-to-file rule as anticipatory of an arbitration action ).

*Second*, Plaintiff's actions before and after he filed suit speak louder than his made-for-litigation explanations and denials.  For example, Plaintiff's misrepresentations, omissions, and machinations leading up to the filing of this case belie the statement in his Opposition that he "could not, and did not, anticipate being sued by IMG…."  Opp'n 3.  To be sure, Baldwin's veracity and credibility are questionable at best given his conduct since he filed this action (including his

---

[3] *See, e.g., Mission*, 706 F.2d at 602 (applying the anticipatory strike exception despite first-filer's assertion that the opposing party never threatened suit and finding "there can really be no dispute that Mission expected Puritan to file suit if its claim was denied"); *Gribin v. Hammer Galleries*, 793 F. Supp. 233, 235 (C. D. Cal. 1992) (applying the anticipatory strike exception where the defendant did not expressly threaten to sue, but had merely sent a rescission demand).

spoliation of evidence and attempts to cover up his theft of IMG trade secrets), as well as his admission that he lied to IMG just before resigning and filing this lawsuit. Cramer Decl., Ex. 2 (Rubin Supp. Decl. ¶ 3, April 26, 2010) ("I find that the USB thumbdrive I examined is the same device as the Lexar Thumbdrive that was used to copy files from Baldwin's IMG Laptop, and that files were accessed and deleted from the Lexar Thumbdrive between April 9 and April 16, 2010."); Baldwin Cal. Decl. ¶ 61 ("I told O'Hagan that everything was fine, knowing that I would resign the next day.").

Plaintiff's claim that "there were important business considerations underlying the immediate filing of suit" and that he needs a "speedy resolution" to avoid permanently losing clients is also suspect.  Opp'n 23.  Although he suggests IMG is trying to prolong this case and that "[i]t is in IMG's best interests to delay all of the proceedings…" (*id.*), the parties' conduct since this action was filed demonstrates just the opposite motivations.  When IMG's counsel called to meet and confer on this motion, Plaintiff's counsel offered to extend IMG's time to respond.  *See* Cramer Decl. ¶ 3.  Instead, IMG filed its motion early.  Plaintiff's counsel then asked IMG to agree to extend the briefing schedule and hearing date by at least two weeks.  *Id.* ¶ 6. IMG refused for the express reason that it wants this matter heard and resolved as soon as possible.  *Id.*  On a parallel track in Ohio, IMG has filed a motion for a temporary restraining order and has worked as quickly as possible to obtain a ruling. On the other hand, Plaintiff has not taken any steps to expedite his proceeding here and appears content to have won the race to the courthouse.

*Third*, Plaintiff had objective reasons to expect to be sued.  Plaintiff had the advantage of knowing the truth about all the things he had done, which he either lied about or withheld from IMG.  Putting aside what he may or may not have done with respect to his non-solicitation agreement (and IMG has not yet had the benefit of any discovery on that issue), Plaintiff knew that he had improperly taken IMG

documents.[4]  He not only took IMG's trade secret documents and copied them to a CAA computer, but he attempted to cover up what he had done by deleting documents from his USB drive before returning the drive to IMG's counsel.  As a lawyer with "experienced counsel" of his own,[5] Plaintiff knew IMG would likely sue him when it discovered the truth. [6]  Plaintiff argues that the case law cited in IMG's opening brief is off-point because the first-filers in those cases were actually in breach of their non-compete provisions and, therefore "in a state of anticipation" that they would likely be sued.[7]  *See* Opp'n 17.  But here, Plaintiff breached the confidentiality provision (if not other provisions) in his contract and, therefore, was likewise in a state of anticipation that he would be sued once IMG learned of the breach.  Indeed, as noted above, he admits in his declaration that he expected IMG to initiate litigation.

*Fourth*, even assuming for argument's sake that Plaintiff did not anticipate IMG's lawsuit, he cannot argue that the anticipatory strike exception does not apply based on IMG's failure to threaten litigation.  The reason is simple—Plaintiff purposely prevented IMG from making such a threat.  IMG did not threaten Plaintiff with litigation because IMG did not know it had reason to sue until Plaintiff had already filed his California complaint, only moments after resigning.  IMG did not

---

[4] Paragraph 5 of Plaintiff's Employment Agreement provides, "They [IMG's files documents and records]…shall be returned to IMG at the termination of Employee's employment."  Plaintiff knew he had no right to retain IMG's property after he resigned.

[5] Even Plaintiff's counsel concedes Plaintiff "copied more [IMG documents] than he probably should have."  *See* Laufgraben Decl., Ex. B (Ohio Hr'g. Tr. at 19:11-12).  A few seconds later, counsel admits that Plaintiff "probably shouldn't have copied anything."  *See id.*

[6] Plaintiff acknowledges he was aware of and familiar with the *Danzi* case and he hired the same lawyers who litigated against IMG in *Danzi*.  *See* Baldwin Cal. Decl. ¶¶ 38-40; Kaiser Decl. ¶¶ 2-12.  Plaintiff's insider knowledge about IMG's approach in *Danzi* no doubt instructed his conclusion that IMG would sue him, too.  *See* Baldwin Cal. Decl. ¶¶ 40-41.

[7] Plaintiff also argues that several of IMG's cases are inapposite because they are *Brillhart* abstention cases.  *See* Opp'n 17-18.  This is not a meaningful distinction.  Like the declaratory judgment doctrine and the first-filed exceptions, the *Brillhart* doctrine also seeks to discourage forum shopping.  There is no reason to distinguish between forum shopping under the *Brillhart* and forum shopping under the DJA or the first-to-file rule.  *See Dizol*, 133 F.3d at 1225, n.5 (Ninth Circuit describing the *Brillhart* factors, along with others, as considerations in determining whether to exercise discretionary jurisdiction under the DJA).

know it had reason to sue because Baldwin lied on March 31 and April 1 to his supervisors about his intentions to stay at IMG and withheld critical information from IMG.  There is a fundamental maxim of jurisprudence codified under California law that "[n]o one can take advantage of his own wrong."  Cal. Civ. Code § 3517; *see Riggs v. Palmer,* 115 N.Y. 506, 511 (1889) ("No one shall be permitted to. . .take advantage of his own wrong, or to found any claim upon his own iniquity. . . .").  The Court should not permit Plaintiff to maintain a claim or otherwise gain an advantage in this case because of his own lies and deceit.

If he had been honest with IMG, then IMG could have either threatened legal action, filed suit, or both.  But Plaintiff made it impossible for IMG to take any action before he filed his complaint in California.[8]  Plaintiff cannot claim victory in a race to the courthouse when he not only failed to tell IMG there was a race, but also took active steps to keep IMG from finding out about the race until he had "won."  *See NSI Corp. v. Showco, Inc.*, 843 F. Supp. 642, 645 (D. Or. 1994) (drawing a distinction between a first-filer who "won a race to the courthouse where the parties were on equal footing" and a case where the second-filer "did not know that the race to the courthouse had begun").  Not surprisingly, Plaintiff cannot cite any case in which the first-to-file rule was applied notwithstanding the first filer's lies and deception specifically geared towards ensuring he would be the first filer.

**Plaintiff's suit is tainted by his misleading tactics.**  Without the lies, deception, and other sharp practices referenced above, Plaintiff may not have been able to beat IMG in the race to the courthouse.  Given Plaintiff's improper conduct, we will never know what would have happened on a level playing field.  In any event, Baldwin's misleading tactics provide a separate basis for the Court to disregard the first-to-file rule here.  *See, e.g., Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assocs., Inc.,* 16 Fed. Appx. 433, 438-39 (6th Cir. 2001) (affirming district court's finding that

---

[8] Incidentally, another maxim codified in California is that "[t]he law never requires impossibilities."  Cal. Civ. Code § 3531.

suit was filed in bad faith based on plaintiff's "gamesmanship and procedural fencing").

In sum, for any and all of these reasons, Plaintiff's case falls within various exceptions to the first-to-file rule.  Accordingly, the Court can and should exercise its discretion and dismiss this case.

## II.   THE STIPULATED JUDGMENT IN THE DANZI ARBITRATION MAY NOT BE USED TO INVOKE COLLATERAL ESTOPPEL.

Plaintiff argues that the District Court's confirmation of the Danzi Consent Award has collateral estoppel effect and binds not only IMG but this Court with respect to the enforceability of Plaintiff's non-solicitation provision.  Plaintiff is wrong.

As Plaintiff acknowledges, collateral estoppel only applies to a "final judgment on the merits."  Plaintiff attempts to pass off a Consent Award confirmed by a stipulated judgment as a "final judgment on the merits."  However, these consensual agreements entered into by the parties are not judgments on the merits for issue preclusion purposes.  *See* 18 Moore's Fed. Prac. § 132.03[2][i].  Instead, these documents represent agreements by both parties to settle the disputes between them. *See In re Berr*, 172 B.R. 299, 306 (B.A.P. 9th Cir., Sept. 14, 1994) ("Ordinarily, stipulated or consent judgments do not provide a basis for collateral estoppel.  The very purpose of a stipulated or consent judgment is to avoid litigation, so the requirement of actual litigation will always be missing.").

All of the cases cited by Plaintiff are inapposite.  None of them involves a situation in which a court gave collateral estoppel effect to an interim order, or a consent award (rather than a final arbitration award) confirmed by a stipulated judgment.[9]  Moreover, even if this Court considered applying collateral estoppel to

---

[9] Plaintiff cites the following cases which did not involve an arbitrator's interim order, nor a consent award confirmed by stipulated judgment (*See* Opp'n 13 n.8):  (1) *Greenwich Ins. Co. v. Media Breakaway, LLC*, No. CV08-937 CAS, 2009 WL 2231678, at *1 (C.D. Cal. Jul. 22, 2009) (applying collateral estoppel effect to a "final arbitration award"); (2) *In re Gunther*, 2009 WL 3104033, at *2 (B.A.P. 6th Cir. Sept.

such an order, the threshold requirements of collateral estoppel have not been met. The issues in the two cases are critically different in light of the underlying facts.

## III. Plaintiff's Venue Argument Is A Red Herring And Has No Bearing On IMG's Motion.

Plaintiff argues that he "[only] consented to the jurisdiction of the Ohio courts for [the] narrow and particular purpose [of] provisional relief pending arbitration." Opp'n 3. Plaintiff's crabbed reading of his employment agreement is unsustainable, as the agreement provided that Ohio law governed and that Ohio would be the forum for any arbitration or court proceeding. Plaintiff further argues that the Court should deny IMG's motion because Ohio is an improper venue. Opp'n 23-25. Not so. Venue in Ohio is absolutely proper as Plaintiff is alleged to have stolen trade secrets from an Ohio company. Moreover, this Court need not and should not consider Plaintiff's venue arguments in deciding this motion because IMG presented valid independent grounds for dismissal in its opening brief. *See Successories, Inc. v. Arnold Palmer Enter., Inc.*, 990 F. Supp. 1044, 1047 (N.D. Ill. 1998) (granting dismissal based on its discretionary jurisdiction under the DJA notwithstanding plaintiff's venue arguments with respect to the second-filed action).

Further, Plaintiff's venue arguments should be submitted to and decided by the Ohio court. *See Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (E.D. Pa. 1998) ("Trippe's venue arguments may properly be addressed to and decided by the Rhode Island court, even though the action was first filed in Illinois."). In fact, Plaintiff already formally raised his venue objections with the Ohio court, which is the proper court to resolve the issue. Opp'n 23. Accordingly, this Court should not consider any of Plaintiff's venue objections with respect to the Ohio action.

30, 2009) (applying collateral estoppel effect to an actual arbitration award in which the arbitrator found in favor of a party and awarded damages); (3) *Witkowski v. Welch*, 173 F.3d 192, 197 (3rd Cir. April 12, 1999) (applying collateral estoppel to an actual arbitration award in which the arbitrator dismissed some claims, found liability on others, and issued an award amount).

1
2
3
4

[10] *See Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 n.6 (7th Cir. 1987) (refusing to address declaratory plaintiff's venue objections to subsequently second-filed action in Connecticut, finding that "[s]uch contentions should have been, and apparently were, addressed to the Connecticut district court").

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Further, while Plaintiff boasts that he will prevail on his venue motion in Ohio, the law clearly indicates otherwise.  Plaintiff wholly ignores the fundamental tie that IMG's action has to Ohio:  Many of the trade secret, confidential, and proprietary documents that Plaintiff stole from Ohio-based IMG were created, developed and housed in Cleveland.  *See*, *e.g.*, *Harry Miller Co. v. Carr Chem.*, 5 F. Supp. 2d 295, 298 (E.D. Pa. 1998) ("trade secrets have a situs in their state of origin"); *Argent Funds Group*, 2006 U.S. Dist. LEXIS 60469, at *6-7.  The fact the harm is felt in Ohio also supports venue in Ohio.  *See*, *e.g.*, *Renteria v. Ramanlal*, 2009 U.S. Dist. LEXIS 4127, at *15-18 (D. Ariz. Jan. 9, 2009) (finding venue proper in district where the plaintiff was headquartered because "the place where the harm occurred is relevant to determining venue" and "throughout the negotiations, Defendants were well aware that they were entering into business deals with parties centered in Arizona");  *N.Y. Mercantile Exch. v. Central Tours Int'l, Inc.*, 1997 U.S. Dist. LEXIS 9242 (S.D.N.Y. Jul. 1, 1997) ("Plaintiff also alleges that it suffered financial loss in New York as a result of defendants' acts.  The place where the harm occurred is also relevant for venue purposes").  Plaintiff's agreement to be bound by Ohio law further weighs in favor of venue in Ohio.  *See Premcor Ref. Group, Inc. v. Born, Inc.*, 2006 U.S. Dist. LEXIS 935, at *14 (N.D. Ohio Jan. 12, 2006) ("Since the choice of law provision in the contract entered into between the parties requires the application of Ohio law, this is another reason for retention of venue in this Court").

25
26

27
28

---

[10] If the Court decides to address Plaintiff's venue arguments, it should review IMG's Worldwide Inc.,'s Response to Plaintiff's Motion to Dismiss or Transfer in the Ohio action.  *See* Cramer Decl., Ex. 3 (IMG's Worldwide Inc.,'s Response to Plaintiff's Motion to Dismiss or Transfer).

## <u>CONCLUSION</u>

For all the reasons stated above and in IMG's opening brief, IMG respectfully requests that its motion to dismiss be GRANTED.

DATED:  May 13, 2010                         Respectfully submitted,

                                             KIRKLAND & ELLIS LLP


                                              /s/ Jeffrey S. Sinek
                                             Mark Holscher
                                             Jeffrey S. Sinek
                                             Mark T. Cramer

                                             Attorneys for Defendant
                                             IMG WORLDWIDE, INC.

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have electronically filed the foregoing **IMG'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

Adam J. Kaiser, Esq.                       Jeffrey L. Kessler, Esq.
akaiser@dl.com                             jkessler@dl.com

Matthew McDonnell Walsh
mwalsh@dl.com

Executed May 13, 2010, at Los Angeles, California.


                                    /s/ Jeffrey S. Sinek
                                   Jeffrey S. Sinek